IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION AT LAFAYETTE

| | | |
|---|---|---|
| DEBORAH L. BROOKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 4:08-cv-43 |
| | ) | |
| KIRBY RISK CORP., | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

This matter is before the Court on Kirby Risk Corporation's Motion For Summary Judgment, filed by Defendant, Kirby Risk Corporation, on April 15, 2009 (DE # 20). For the reasons set forth below, the Motion for Summary Judgment is **GRANTED**. The Clerk is **ORDERED** to **DISMISS WITH PREJUDICE** Plaintiff's complaint. The Clerk is **FURTHER ORDERED** to close this case.

BACKGROUND

On June 4, 2008, after filing a charge with the Equal Employment Opportunity Commission ("EEOC") and receiving a right-to-sue notice, Plaintiff, Deborah Brooks ("Brooks"), sued Defendant, Kirby Risk Corporation ("Kirby"), her former employer. Brooks alleged violations of the Americans with Disabilities Act of 1990 ("the ADA"), 42 U.S.C. § 12101, *et seq.*, and the Indiana Civil Rights Act ("the ICRA"), Ind. Code § 22-9-5, *et seq.*, both resulting from Kirby's alleged discrimination against Brooks on the

basis of a disability.[1]  On June 16, 2008, Kirby removed the case to this Court based on federal question jurisdiction.  28 U.S.C. §1441(b).

Kirby then filed the instant motion for summary judgment on the claims, arguing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. Specifically, Kirby asserts that Brooks was not disabled under the ADA, nor was she regarded as disabled under the ADA, and, even if she was, Kirby is nonetheless entitled to summary judgment because Kirby made reasonable efforts to accommodate her.  On June 15, 2009, a hearing on Kirby's Motion for Summary Judgment was held in Lafayette, Indiana, after which both parties submitted supplemental briefs.  Having been fully briefed, the motion is now ripe for adjudication.

DISCUSSION

Summary Judgment

The standards that generally govern summary judgment motions are familiar.  Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper only if it is demonstrated that there is no genuine issue as to any material fact and that the

---

[1]   Claims of disability discrimination brought under the ADA and ICRA are analyzed in the same manner. *See Tracy v. Fin. Ins. Mgmt. Corp.*, 458 F. Supp.2d 734, 742 (S.D. Ind. 2006).  Accordingly, this order will heretofore refer solely to the ADA in analyzing whether Brooks is disabled under both the federal and state statutes.

moving party is entitled to judgment as a matter of law. *See Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In other words, the record must reveal that no reasonable jury could find for the nonmovant. *Karazanos v. Navistar Int'l Transp. Corp.*, 948 F.2d 332, 335 (7th Cir. 1991); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). In deciding a motion for summary judgment, a court must view all facts in the light most favorable to the nonmovant. *Anderson*, 477 U.S. at 255; *Nucor Corp. v. Aceros Y Maquilas De Occidente*, 28 F.3d 572, 583 (7th Cir. 1994).

The burden is upon the movant to identify those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits," if any, that the movant believes demonstrate an absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the movant has met this burden, the nonmovant may not rest upon mere allegations but "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assocs., Inc.*, 914 F.2d 107, 110 (7th Cir. 1990); *Schroeder v. Lufthansa German Airlines*, 875 F.2d 613, 620 (7th Cir. 1989). "Whether a fact is material depends on the substantive law underlying a particular claim and 'only disputes over facts that *might affect the outcome* of the suit under governing law will properly preclude the entry of summary judgment.'" *Walter v.*

3

*Fiorenzo*, 840 F.2d 427, 434 (7th Cir. 1988) (citing *Anderson*, 477 U.S. at 248).

"[A] party who bears the burden of proof on a particular issue may not rest on its pleading, but must affirmatively demonstrate, by specific factual allegations, that there is a *genuine* issue of material fact which requires trial." *Beard v. Whitley County REMC*, 840 F.2d 405, 410 (7th Cir. 1988) (emphasis in original); *see also Hickey v. A.E. Staley Mfg.*, 995 F.2d 1385, 1391 (7th Cir. 1993). Therefore, if a party fails to establish the existence of an essential element on which the party bears the burden of proof at trial, summary judgment will be appropriate.

Facts

Brooks worked at Kirby's headquarters in Lafayette, Indiana, from 1987 until 2007. (Brooks Aff. ¶ 2, DE # 24-2.) Originally, Brooks worked in Kirby's accounting department. (*Id*.) However, in 1993, Brooks was transferred to the warehouse, where she was responsible for packing orders and preparing them for delivery. (Brooks Depo. 38:22-39:9, DE # 22-2.)

In 2004, Brooks sustained a back injury while working in the warehouse. (Brooks Depo. 65:7-13, DE # 22-2.) As a result, from April 28, 2004, to May 14, 2004, Brooks was placed on leave pursuant to the Family Medical Leave Act ("FMLA"). (Bradley Dec. ¶ 5, DE # 22-3.) On May 14, 2004, Brooks returned to work for 4

4

hours a day, but with a 20 pound lifting restriction. (*Id.* at ¶ 6.) On June 7, 2004, Brooks' chiropractor, Dr. Doug Williams, released her to work 8 hour days with the 20 pound weight restriction remaining in effect through June 21, 2004. (Exhibit E to Brooks Depo., DE # 22-2.)

In 2005 and 2006, Kirby downsized its Lafayette branch and eliminated Brooks' position in the warehouse. (Gutridge Dec. ¶¶ 5-6, DE # 22-4.) Brooks then applied for a showroom/delivery position, which she was offered in February 2006. (Brooks Depo. 49:20-50:12, DE # 22-2.) The description of the showroom/delivery position identified the "[a]bility to push, pull, lift, and carry up to 50 lbs" as an essential function of the job. (Exhibit B to Brooks Depo., DE # 22-2.)

In August 2006, Brooks was off of work for approximately 6 weeks for carpel tunnel surgery. (Bradley Dec. ¶ 10, DE # 22-3.) Although she initially had lifting restrictions as a result of her surgery, Brooks' lifting restrictions were removed by October 30, 2006. (*Id.*)

In November 2006, Jennifer Swisher, a Kirby branch manager, told Brooks that she was being made a route driver. (Brooks Aff. ¶ 9, DE # 24-2.) Brooks immediately expressed her belief that, due to her 2004 injury, she could not lift enough to be a route driver. (Brooks Depo. 86:3-7, DE # 22-2.) Brooks asserts that she was then angrily dismissed from Swisher's office. (Brooks Aff. ¶¶ 10-11, DE

# 24-2.) Brooks subsequently provided Swisher with a copy of her medical restriction, which stated that she should not do "repetitive lifting over 20-25 lbs." (Ex. G to Brooks Depo., DE # 22-2.)

In her deposition, Brooks confirmed that the physical requirements for the delivery position were the same as the requirements for the showroom/delivery position she already had. (*Id*. at 86:1-2, 89:22-25.) Nonetheless, she testified that the lift and carry requirements of the delivery position were beyond the restriction that she alleges should have been in place after her accident in 2004. (*Id*. at 78:24-79:4.)

On November 21, 2006, Kirby placed Brooks on FMLA leave. (*Id*. at 89:10-16.) She remained on FMLA leave until March 2007, when her FMLA time limit was exhausted, at which point Kirby terminated her employment. (*Id*. at 89:10-16, 90:8-10.) Kirby informed Brooks that she was free to contact them in the future if her physical restrictions were lifted. (Ex. K to Brooks Depo., DE # 22-2.)

On June 4, 2008, Brooks brought suit against Kirby for violations of the ADA, 42 U.S.C. § 12101, *et seq*., and the ICRA, Ind. Code § 22-9-5, *et seq*. Kirby now moves for summary judgment on both claims.

## The ADA and the ADA Amendments Act of 2008

The ADA was enacted in 1990 in order to prevent employers from

discriminating against qualified individuals on the basis of a disability. 42 U.S.C. § 12112(a). The statute defined a disability as "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (current version at 42 U.S.C. § 12102(1)).

Because the 1990 statute failed to define the terms 'substantially limits' and 'regarded as,' the precise meaning of each phrase was left to judicial interpretation. *See, e.g.*, *Toyota Motor Mfg., Ky., Inc. v. Williams*, 534 U.S. 184, 198 (2002) (holding that a disability 'substantially limits' a major life activity where it "prevents or severely restricts the individual from doing activities that are of central importance to most people's daily lives" and has an impact that is "permanent or long term."); *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 489 (1999) (holding that in order to be 'regarded as' having a disability, an employer must "believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.").

In September 2008, President Bush signed the ADA Amendments Act of 2008 ("ADAAA"), which went into effect on January 1, 2009. Pub. L. No. 110-325, 122 Stat. 3553 (codified as amended at 29

U.S.C. § 12101 *et seq.*). Although the ADAAA left unchanged the definition of 'disability' found in the 1990 Act, the amendments conveyed Congress' intent to reject both *Toyota*'s interpretation of 'substantially limits,' and *Sutton*'s reasoning concerning the 'regarded as' prong of the Act's definition of a 'disability.' *Id.* at sec. 2(b)(3)-(4). In doing so, Congress dramatically expanded the reach of the ADA by protecting individuals who are 'regarded as' having a disabling impairment even when the impairment neither is, nor is perceived to be, substantially limiting. *See* 42 U.S.C. § 12102(3)(A) ("An individual meets the requirement of 'being regarded as having such an impairment' if the individual establishes that he or she has been subjected to an action prohibited under this Act because of an actual or perceived physical or mental impairment whether or not the impairment limits or is perceived to limit a major life activity.").

<u>The Effect of the ADA Amendments Act of 2008 on Brooks' claim</u>

In their supplemental brief, Kirby argues that the ADAAA does not apply retroactively, and, therefore, Brooks' claim must be evaluated under the ADA as it existed when the alleged violations took place. (DE # 29 at 1-3.) Brooks does not dispute Kirby's argument that the ADAAA has no retroactive application; however, she argues that the amendments clarify Congressional intent with regard to the 1990 statue. (DE # 30 at 3.)

8

The Seventh Circuit, along with the Fifth, Sixth, and D.C. Circuit Courts of Appeals, have each held that the ADA Amendments are not retroactive. *See Winsley v. Cook County*, 563 F.3d 598, 600 n.1 (7th Cir. 2009); *Kiesewetter v. Caterpillar Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008).[2] Noting that there is no dispute between the parties on this point, this Court likewise concludes that the amendments are not retroactive and that Brooks' claims must be analyzed under the ADA of 1990.

Brooks' argument that Congressional intent expressed in the ADAAA should influence this Court's interpretation of the 1990 law was recently recognized by the Ninth Circuit, which held that, "the ADAAA sheds light on Congress' original intent when it enacted the ADA." *Rohr*, 555 F.3d at 861; *see also Yount v. Regent Univ., Inc.*, No. CV-08-8011-PCT-DGC, 2009 WL 995596, at *4 (D. Ariz. Apr. 14, 2009) ("this Circuit recognizes that the ADAAA may be relevant to the scope of terms within the ADA."). To the extent, however, that the Ninth Circuit opined that the ADAAA should influence a court's reading of the 1990 ADA, *Rohr* is inconsistent with Seventh Circuit precedent instructing courts to use not only the laws but also the

---

2   *See also E.E.O.C. v. Agro Distrib., LLC*, 555 F.3d 462, 469 n.8 (5th Cir. 2009) (holding that the amendments do not apply retroactively); *Milholland v. Sumner County Bd. of Educ.*, 569 F.3d 562 (6th Cir. 2009) (same); *Lytes v. D.C. Water & Sewer Auth.*, 572 F.3d 936, 2009 WL 2152427 (D.C. Cir. Jul. 21, 2009) (same). *But see Rohr v. Salt River Project Agric. Improvement and Power Dist.*, 555 F.3d 850, 861 (9th Cir. 2009) (declining to decide whether the amendments apply retroactively); *Durham v. McDonald's Rest. of Okla., Inc.*, 2009 WL 1132362 (10th Cir. Apr. 28, 2009) (same); *Shannon v. Potter*, 2009 WL 1598442 (11th Cir. June 9, 2009) (same).

9

"interpretations that were in force when the complained-of-acts occurred." *Kiesewetter v. Caterpillar Inc.*, 295 Fed. Appx. 850, 851 (7th Cir. 2008).

The Western District of Wisconsin recently rejected an argument similar to Brooks', citing the United States Supreme Court's reasoning in *Landgraf v. USI Film Prod.*, 511 U.S. 244, 280 (1994), and holding that there is a presumption against statutes having a retroactive effect, in order to avoid "increas[ing] defendant's liability for past conduct." *Ekstrand v. School Dist. of Somerset*, 603 F. Supp. 2d 1196, 1205 (W.D. Wis. 2009).

Using Congress' stated purpose for enacting the ADAAA to interpret the ADA as it existed in 2007 could potentially increase Kirby's liability for past conduct. Absent explicit Congressional intent to do so, Brooks' claim must be analyzed using both the statute and the interpretation thereof that existed in 2007 (when the alleged violations occurred).

That interpretation includes the two cases that were expressly overturned by the ADAAA: *Toyota*, 534 U.S. 184, and *Sutton*, 527 U.S. 471. Due to the Court's recognition of complete judicial retroactivity, had the Supreme Court, rather than Congress, overturned *Toyota* and *Sutton*, they would not properly apply to this case. *See Harper v. Virginia Dep't. of Taxation*, 509 U.S. 86, 97 (1993) ("When this Court applies a rule of federal law to the parties before it, that rule is the controlling interpretation of

federal law and must be given full retroactive effect in all cases still open on direct review and as to all events, regardless of whether such events predate or postdate our announcement of the rule."). However, when Congress overturns judicial precedent, the usual rules of legislative retroactivity apply.

An example of this can be seen in the recent case *AT&T Corp. v. Hulteen*, 556 U.S. --, 129 S. Ct. 1962 (2009), dealing with the Pregnancy Discrimination Act ("PDA"). In 1978, Congress passed the PDA, which mandated that it was discriminatory to treat pregnancy-related conditions less favorably than other conditions. 92 Stat. 2076, 42 U.S.C. §2000e(k). By prohibiting sex discrimination on the basis of pregnancy, the PDA superceded *General Elec. Co. v. Gilbert*, 429 U.S. 125 (1976), a prior Supreme Court case that had permitted wage discrimination based on pregnancy. In 2009, in *AT&T*, the Supreme Court held that the PDA was not retroactive and sought to determine whether AT&T was liable for conduct predating the enactment of the PDA. The Court expressly cited reasoning from *Gilbert*, though that case had long since been overturned by Congress, because it set forth the state of the law at the time of the alleged violation. *AT&T*, 129 S. Ct. at 1969-70.

Here too, this Court must use *Toyota*, *Sutton*, and their progeny in the Seventh Circuit Court of Appeals and District Courts, in order to determine whether Brooks' claims regarding Kirby's alleged violation of the 1990 ADA can survive summary

11

judgment.

Brooks' Alleged Disability Under the 1990 ADA

A plaintiff seeking to avoid summary judgment on an ADA claim "must demonstrate that there is at least a genuine issue of material fact as to whether [s]he is disabled, whether [s]he can perform the essential functions of the position, and whether [s]he has suffered an adverse employment action because of his [or her] disability." *Kupstas v. City of Greenwood,* 398 F.3d 609, 611 (7th Cir. 2005).

Turning first to the issue of whether Brooks is considered 'disabled' under the 1990 ADA, she must show that there is a genuine issue of material fact as to whether she possessed any of the following: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2) (current version at 42 U.S.C. § 12102(1)). Brooks has not attempted to state a claim under subsection (A). She instead alleges that she has stated a claim under subsection (C) because Kirby regarded her as having a disability.

Regardless of what subsection Brooks is proceeding under, "concepts of 'substantially limits' and 'major life activity' are the same whether the employee is proceeding under a claim that she

is actually disabled or regarded as disabled." *Mack v. Great Dane Trailers*, 308 F.3d 776, 781-82 (7th Cir. 2002). Accordingly, in order for Brooks to prevail under subsection (C), Kirby must have believed that Brooks had a disability that substantially limited her in a major life activity. *Id*. at 782 (citing *Sutton,* 527 U.S. at 489; *EEOC v. United Parcel Serv., Inc.*, 306 F.3d 794, 796-97 (9th Cir. 2002); *Gordon v. E.L. Hamm & Assocs., Inc.*, 100 F.3d 907, 913 (11th Cir. 1996)).

Brooks argues that Kirby regarded her as having a disability that substantially limited her in the major life activity of working. *E.g.*, *Sutton*, 527 U.S. 471 (in which the Court assumed without deciding that working is a major life activity under the ADA). Kirby, however, argues that a twenty-five pound lifting restriction does not substantially limit any major life activities and, since that restriction is the only one Kirby believed Brooks to be under, it did not regard her as being disabled under the ADA.

Indeed, relevant Seventh Circuit authority supports Kirby's conclusion. *See Squibb v. Mem'l Med. Ctr.*, 497 F.3d 775, 782 (7th Cir. 2007) (holding that a nurse who was unable to lift more than ten pounds per day was not substantially limited in the major life activity of working); *Mays v. Principi*, 301 F.3d 866, 869-70 (7th Cir. 2002) (expressing doubt that the inability to lift more than 10 pounds constitutes a disability under the ADA); *Contreras v. Suncast Corp.*, 237 F.3d 756, 763 (7th Cir. 2001) (holding that an

individual who was "unable to lift in excess of 45 pounds for a long period of time," and "unable to engage in strenuous work" was not substantially limited in the major life activity of working).

In contrast, a restriction substantially limits the major life activity of working where an employee shows that he or she is restricted from a "broad class of jobs" based on "the breadth of the restrictions placed on plaintiffs and their doctors' recommendations concerning how their respective injuries would affect their ability to obtain other employment." *Contreras*, 237 F.3d at 763 n.5; see also *DePaoli v. Abbott Lab.*, 140 F.3d 668, 673 (7th Cir. 1998) (in which plaintiff raised a triable issue of whether her restriction substantially limited the major life activity of working by producing medical evidence opining that she could not perform any employment requiring repetitive hand motions).

Here, Brooks alleges that Kirby perceived her as unable to perform any job within the company that had a lifting restriction. Yet Brooks' inability to work specific jobs at Kirby is not necessarily indicative of her inability to obtain similar employment at other warehouses or with other companies. *See Contreras*, 237 F.3d at 763 n.5. In fact, Brooks has failed to present any evidence that her restriction, or perceived restriction, would preclude her from performing a broad class of jobs or obtaining other similar employment. As such, Brooks has

14

failed to raise a triable issue that her inability to lift 25 pounds and/or Kirby's perception thereof, renders her disabled under the 1990 ADA.[3]

Because Brooks has failed to raise a triable issue of fact regarding her alleged disability under the ADA, this Court need not consider any subsequent issues, including those raised in supplemental briefing.[4]  (DE ## 29-30.)

CONCLUSION

Based on the foregoing, Brooks was not disabled under the 1990 ADA.  Because Brooks has failed to raise a genuine issue of material fact, Kirby Risk Corporation's Motion for Summary Judgment (DE # 21) is hereby **GRANTED**.  The Clerk is **ORDERED** to dismiss with prejudice Plaintiff's claims against the Defendant.  The Clerk is **FURTHER ORDERED** to close this case.

---

3  As previously noted, the analysis of whether Brooks is disabled under the ADA is the same under the ICRA, which defines a disability as "(1) a physical or mental impairment that substantially limits at least one (1) of the major life activities of the individual; (2) a record of an impairment described in subdivision (1); or (3) being regarded as having an impairment described in subdivision (1). Ind. Code § 22-9-5-6.  Having determined that Kirby did not regard Brooks as having a disability under the ADA, the same is true under the IRCA.  Therefore, Kirby is entitled to summary judgment on Brooks' IRCA claim as well as her ADA claim.

4  The parties submitted supplemental briefs following the June 15, 2009, hearing in which they discussed the existing circuit split on whether the ADA requires employers to accommodate employees with perceived disabilities.  Here, since Kirby did not regard Brooks as having a disability under the ADA, this Court need not determine whether Kirby was required to afford her accommodations.

15

DATED: September 21, 2009          /s/ RUDY LOZANO, Judge
                                   United States District Court